# CHARLESTON.

McClanahan et al v. McClanahan et al.

Submitted January 14, 1892.   Decided February 3, 1892.

1. ADVANCEMENTS—INTENTION.
    Where a father confers the title to either real estate or personal property upon his children, and in the distribution of his estate it is claimed that the title so conferred was by way of advancement, the solution of the question depends upon the intention of the father in so disposing of said property, which is to be ascertained from the evidence and surrounding circumstances, such as the value of his entire estate, the number of his children, etc.

2. Advancements—Consideration.

Where a conveyance is made by a father to his children in consideration of one dollar or a very inadequate consideration and for the further consideration of natural love and affection the conveyance so made is *prima facie* an advancement to the grantees.

3. Advancements—Parol Evidence—Intention.

After the death of the father, on the distribution of his estate, parol testimony is admissible to explain the attending circumstances of the conveyance, and that it was intended, either in whole or in part, as an advancement.

4. Advancements.

Where the question as to whether in making conveyances to some of his children, the father intended them by way of advancements, has been referred to a commissioner, who, upon the evidence adduced before him, which is returned with his report, has found that such conveyances had been made by way of advancement, which report is excepted to as being unsupported by the evidence, this Court will review the evidence, but, unless the same is clearly insufficient in any reasonable view of it to support the findings of the commissioner, will affirm the decree of the Circuit Court confirming such report.

*J. W. Kennedy* for appellants cited 1 Bowv. L. Dict. 92; 23 Pa. St. 85; 11 Johns. 91; 31 Gratt. 84–92; 5 W. Va. 59; 25 W. Va. 760–774.

*Jackson & Knight* for appellees cited 3 Com. 31; 8 Am. Dec. 152; 3 Jones Eq. 373; 30 W. Va. 619; 31 Gratt. 84; 89 Pa. St. 34; 63 Pa. St. 309; 83 Pa. St. 89; 31 Ia. 151; 27 Md. 693; 44 Pa. St. 460; 27 W. Va. 639; 28 W. Va. 379; 19 Md. 323; 18 Ill. 167; 4 Ala. 121; 4 Strob. 124; 28 W. Va. 760.

English, Judge:

John R. McClanahan, who was a resident of Kanawha county, was married twice, and died in the year 1887, leaving issue, as the result of both marriages, and his second wife, surviving him. The children by the first marriage were Elizabeth Bailey, Sallie Looney, Rachael Derrick, John W. McClanahan, and Samuel and James P. McClanahan. The last two named died before their father; said Samuel leaving two children, and James P. leaving six children. The children of said second marriage were C. H. McClanahan, and Richard, Robert, and Jarrett Mc-

Clanahan. Said John R. McClanahan, in his lifetime, accumulated a considerable amount of property, real and personal, and as early as October 17, 1877, he commenced making conveyances of portions of his real estate to some of his children by his first marriage, and on that day he conveyed to said Elizabeth Bailey, in consideration of one dollar and love and affection, about seventy two acres of his land, which was worth nine hundred and fifty five dollars and fifty cents, reserving the use thereof during the life of the grantor. On the 9th day of November, 1877, he conveyed to said John W. McClanahan in consideration of three hundred dollars and love and affection, one hundred and fifty seven and a half acres of his land, which was worth one thousand six hundred and twenty five dollars; also reserving the use thereof during the life of said grantor. He also gave to said Sallie Looney the sum of seven hundred dollars in cash; and on the 28th day of November, 1879, he conveyed to said James P. McClanahan and his six sons one hundred and sixty acres of land in consideration of one dollar and love and affection, which land was worth one thousand nine hundred dollars. He also gave to Rachael Derrick three hundred dollars in money, and to C. H. McClanahan a note for two hundred dollars, made by W. E. Kellar, which said C. H. McClanahan claims to be worthless. Said John R. McClanahan also died seised and possessed of forty acres of bottom land, valued at one thousand dollars; one hundred and fifteen acres of hill land, valued at eight hundred and five dollars; and four hundred acres of hill land, valued at two thousand dollars.

In the month of February, 1888, said C. H. McClanahan, and Richard McClanahan, Robert McClanahan, and Jarrett McClanahan, children of said John H. McClanahan by said second marriage, filed their bill in the Circuit Court of Kanawha county against Jane McClanahan, widow of said John R. McClanahan, and the other heirs at law of said John R. McClanahan, in which they set forth the facts above stated in reference to the conveyances made by said John R. McClanahan in his lifetime to said Elizabeth Bailey, John W. McClanahan, James P. McClanahan, and his six sons; also as to the amounts of money advanced to the

said Sallie Looney and Rachel Derrick, and the note on W. E. Kellar for two hundred dollars, which was given to him by said John R. McClanahan, alleging that said conveyances and gifts were made by way of advancement, and also alleging that the lands of said John R. McClanahan which he had not advanced to his children, and which he still owned, embraced about six hundred acres, and that the plaintiffs were entitled to and desired a partition; and they further alleged that there was no personal estate for distribution; that the said C. H. McClanahan desired to throw the said Kellar note so advanced to him into hotchpot, and return the same to the estate, and for that purpose filed the same with his bill, subject to the disposal of the court. They prayed that partition might be made of the lands of which the said John R. McClanahan died seized and possessed, and that the children and grandchildren of said John R. McClanahan, to whom advancements had been made as thereinbefore stated by said John R. McClanahan, in his lifetime, should not be allowed to come into partition, and receive any part of the lands then remaining to be divided, unless they should first bring said advancements into hotchpot, to be also divided among the heirs of the said John R. McClanahan; and for all such other relief as they might be entitled to.

The infant defendants filed a formal answer by guardian *ad litem*, and the adult defendants also answered said bill, denying that any of said tracts of land were conveyed by John R. McClanahan to them, or either of them, by way of advancement, and claiming that a good, valid, and adequate consideration was paid for said lands, notwithstanding the recitals in said deeds of love and affection, *etc.* They deny that seven hundred and fifty dollars was advanced to said Sallie Looney, but admit that seven hundred dollars were given her by said John R. McClanahan. They also deny that the three hundred dollars received by Rachel Derrick was so received by way of advancement, but allege that a full, adequate, and valid consideration was given said John R. McClanahan for the same, pursuant to contract, and not by way of advancement; and they deny that any conveyances made or money paid to them by said John R.

McClanahan were advancements to them, respectively, or that they were so intended, and allege that said McClanahan received full, adequate, and valid consideration for the same; and they deny that the same are entitled to be brought into the division of said estate, except as to said Sallie Looney. They also allege that the plaintiffs have been using, occupying, and cultivating said lands since the death of said John R. McClanahan, and have failed to pay the taxes thereon, or account to the defendants for their share of the rents and profits arising therefrom; and they pray that the said plaintiffs be compelled to account for the rents, issues, and profits arising from said real estate since the same has been in their possession; that a receiver may be appointed to take charge of the crops grown on said real estate, and to pay off said taxes due on said real estate, and to hold the same, rent it out, and pay all the taxes charged on said property, pending said suit, and for general relief.

On the 27th day of June, 1888, a decree was entered in said cause referring the same to a commissioner to make a report showing the advances, if any, made by said John R. McClanahan to each of his children, when and how the same were made, and the amount and value thereof made to each child, and the amount with which each child should be charged at the date of making said report, or account of such advances, *etc.* Quite a number of depositions were taken before said commissioner, and on the 6th day of July, 1889, said commissioner closed his report, filing, however, a supplement to said report on the 9th day of July, 1889. Said commissioner in his report found that an advancement of seven hundred dollars was made in money by said John R. McClanahan to Mrs. Sallie Looney in 1877 or 1878; that the tract of land, containing about seventy two acres, which was conveyed by said decedent to Elizabeth Bailey, was worth nine hundred and fifty five dollars and was an advancement to her, that John A. McClanahan and Rebecca McClanahan, who are infant children of Samuel McClanahan, are entitled to the share their father would have received had he survived said John R. McClanahan; that the one hundred and sixty acres conveyed to James P. McClanahan and his six sons, of the value of one thousand

nine hundred dollars, was also an advancement; also that the three hundred dollars received by Rachel Derrick from her father was so received by way of advancement, and that the tract of a hundred and fifty seven acres which was conveyed by said John R. McClanahan to John W. McClanahan was an advancement to him, less three hundred dollars, and that the value of said advancement was one thousand three hundred and twenty five dollars.

This report was excepted to by counsel for the defendants (1) because it reports that the conveyance to Elizabeth Bailey from John R. McClanahan, deceased, was an advancement, and that she paid no consideration therefor; (2) because it reports that the conveyance to John W. McClanahan was by way of advancement, and that he paid only two hundred and fifty dollars therefor; (3) because it reports that the three hundred dollars paid to Derrick was an advancement; (4) because it attempts to fix the value of the property received by said defendants as of the date of their receipt, and not upon the contract of conveyance; (5) because of all interest he has charged on said land conveyed or money received; (6) because of all charges made in said report against said defendants on account of the land conveyed and money received by them from said John R. McClanahan, deceased; and Rachel Derrick, J. W. McClanahan, and Elizabeth Bailey, defendants, further excepted to said report because of the advancements reported therein against them.

On the 8th day of April, 1890, said cause was heard upon the bill, answers, replications thereto, and upon said commissioner's report, and the depositions of witnesses taken before said commissioner accompanying said report, and upon the supplemental report of said commissioner, and upon the injunction awarded in said cause upon the petition of J. W. McClanahan, upon consideration whereof it was adjudged and decreed that said report of Commissioner Gallaher, as modified by said supplemental report, be, and the same was thereby, approved and confirmed; and, the said C. H. McClanahan electing to bring into hotchpot the note of W. E. Kellar for two hundred dollars, advanced to him by his father, John R. McClanahan, deceased; and the

said Rachel Derrick electing to bring into hotchpot the said sum of three hundred dollars, which said commissioner reported as advanced to her; and the said John W. McClanahan, Sallie Looney, Elizabeth Bailey, and the children of James P. McClanahan not electing to bring into hotchpot the several advancements made to them respectively—it was decreed that the real estate of which said John R. McClanahan died seised and possessed be divided between the plaintiffs to said suit and the two heirs of Samuel McClanahan, deceased, and Rachel Derrick, to whom no advancements have been made, except to the said C. II. McClanahan and Rachel Derrick, who have elected to bring their advancements into hotchpot, as aforesaid; and commissioners were appointed to divide said land, as above indicated, according to quantity and quality, the lot to be laid off to said Rachel Derrick to be of less value than either of the others by three hundred dollars, unless she should elect before said partition was made to repay to said estate said sum of three hundred dollars, then a lot of equal value with those assigned to the others, respectively, was to be allotted to her.

From this decree J. W. McClanahan, Rachel Derrick, S. W. Derrick, Elizabeth Bailey, and Bushrod Bailey obtained this appeal.

The first error assigned and relied upon by the appellants is that the court erred in overruling each and all the exceptions of defendants to Commissioner Gallaher's report. These exceptions were six in number, and, in order to determine the propriety of the action of the court with reference thereto, nearly the entire testimony taken before said commissioner would have to be analyzed, and to some extent the credibility of the witnesses passed upon.

The first exception to said commsssioner's report is: "Because he reports that the conveyance to Elizabeth Bailey from John R. McClanahan, deceased, was an advancement, and that she paid no consideration therefor." Said Elizabeth Bailey states in her deposition that she paid three hundred and fifty dollars for the land to her father— that she paid one hundred dollars down and two hundred and fifty dollars in one year; and when asked what said

land was worth, answered it was worth ten dollars per acre. Her deed calls for seventy nine and one half acres, and recites that it is made in consideration of one dollar and the "love and affection which the party of the first part doth have to the party of the second part; and on the face of the deed said grantor reserved the use of the premises during his natural life; and the said Elizabeth Bailey, when asked, "What, if anything, was said by said John R. McClanahan at the time of your purchase of your real estate of him, or at any other time, as to how he intended that transaction?" answered: "It seems as if it were a sale. I asked him about the payment, and he said it was ten dollars per acre." According, then, to her own testimony, she paid three hundred and fifty dollars for a tract of land valued by the grantor at seven hundred and ninety five dollars, and, instead of stating the true consideration on the face of the deed, allowed the grantor to insert one dollar and love and affection as the consideration, when it was to her interest, if she paid anything for said land, to have the true consideration recited on the face of the deed; and, although she states that two hundred and fifty dollars of the money she paid for said land was furnished by her husband, he was not examined as a witness in support of her testimony.

And again, the fact that the grantor on the face of the deed recites that the deed was made in consideration of love and affection should have great weight in establishing the fact that said conveyance was an advancement to Elizabeth Bailey, and not a sale; and again, the grantees in said deed were estopped by the recitals in the deed under which they claim, and, after they had accepted their deeds from said John R. McClanahan, will not be allowed to contradict such recitals. See 2 Herm. Estop. pp. 749, 750.

The next exception to said report is: "Because it reports that the conveyance to John W. McClanahan was by way of advancement, and that he only paid two hundred and fifty dollars therefor." This deed recites on its face a consideration of three hundred dollars and love and affection, but when placed on the witness stand said John W. McClanahan swears that he paid his father one thousand four hundred dollars in cash for it, or, rather, subject to his or-

ders; that by his order he paid Mrs. Looney five hundred dollars, and the balance he paid to him in installments, and his father had his notes for four hundred and fifty dollars, and he paid those notes. The balance he paid in cash; sometimes twenty dollars, and sometimes he would pay him as much as one hundred dollars.

It appears that John W. McClanahan had in June, 1871, contracted to purchase the prospective interest of his sister Mrs. Looney in said two hundred and eighty six acres of land for the sum, of seven hundred and fifteen dollars, and he states in his deposition that he paid something near five hundred dollars, and the balance he paid to his father. When this was paid does not appear. His attention was called to the fact that the consideration recited in the deed to him from his father was three hundred dollars and love and affection, and was asked to explain why the deed was so written, and replied: "I owed my father, the day the deed was written, three hundred dollars. That is all the reason I can see why it was drawn in that way." He, however, states that he paid one thousand four hundred dollars or somewhere near that, for said tract of land, although he claims it was not worth more than one thousand dollars or one thousand two hundred dollars; and he only produces two notes that he had taken up from his father, one for one hundred dollars and the other for two hundred and fifty dollars. It must be regarded somewhat remarkable that he would pay one thousand four hundred dollars for a tract of land which he says was only worth one thousand dollars, or at most one thousand two hundred dollars, subject to the incumbrance of his stepmother's dower, and subject also to the life-estate of his father. We are led to the conclusion from the circumstances disclosed by the evidence that said commissioner was warranted in finding that the amount of his advancement was one thousand six hundred and twenty five dollars, less three hundred dollars cash paid by him.

As to the three hundred dollars paid Mrs. Derrick by John R. McClanahan, the commissioner finds that to have been an advancement. It appears that Rachael Derrick and her husband moved on a tract of land belonging to

John R. McClanahan, and lived there (how long does not appear) without paying rent, building thereon a small house and some fence, and doing some grubbing; and he states that when he moved from said tract of land he received said three hundred dollars from John R. McClanahan as a gift, and we think the commissioner properly concluded that it was intended by said John R. McClanahan as a gift by way of advancement to his daughter Rachael Derrick.

The fourth and fifth exceptions to said commissioner's report were as follows: "(4) Because he attempts to fix the value of the property received by said defendants as of the date of their receipt, and not upon the contract of conveyance. (5) Because of all interest he has charged on said land conveyed or money received."

The rule in regard to this matter has been laid down by this Court in the case of *Kyle* v. *Conrad*, 25 W. Va. 760, point 1 of syllabus, where it is held that, "if a father dies having advanced to some of his children, by conveying to them real estate, and giving to them personal property by way of advancement, when his estate is divided and distributed his children to whom such advancements have been made should be charged, when their advancements are brought into hotchpot, with the value of the property advanced when received, but not with the rents and profits of the land conveyed to them severally, nor with the increase of the personal properties, nor with the interest on the value received of either the real or personal property during the lifetime of the father; but they must be charged with interest from the death of the father on the value, when received, of all property, real or personal, so advanced." Said commissioner, in his supplemental statement, which was confirmed by the court, has calculated the interest in accordance with this decision.

Now, while it is true that there is some conflict in the testimony upon which the report of said commissioner was based, and he was compelled to grope among the circumstances detailed in order to ascertain the true intention of said John R. McClanahan in making the gifts and conveyances which are disclosed by the record to have been made,

yet circumstantial evidence may be looked into in determining such intention. The presumption is that the parent intends that his children shall share equally in his property, and the amount of the estate and number of the children, as a matter of course, must have weight in considering whether such distribution has been made.

Again, the evidence of advancement need not be conclusive, but a preponderance of testimony is sufficient. Bouvier, in his Law Dictionery, defines "advancement" as follows: "A gift by anticipation from a parent to a child of the whole or a part of what it is supposed such child will inherit on the death of the parent." And in *Lawson's Appeal*, 23 Pa. St. 85, it was held that "advancement is a question of intention; that which was a gift at first cannot subsequently become an advancement."

In the case of *Watkins* v. *Young*, 31 Gratt. 84, the court of appeals of Virginia held that, "if a gift, unexplained, in the lifetime of a father, who dies intestate, to one of his children, is to be presumed in law to be an advancement, this presumption may be repelled by evidence;" and Christian, J., in delivering the opinion of the court (page 88) says: "In some of the states it is held that a gift of any considerable amount is *prima facie* an advancement, and is to be treated, in case the party to whom the advancement was made comes in for a distributive share, as a debt due from him to the estate;" citing *Grattan* v. *Grattan*, 18 Ill. 170; *Jackson* v. *Matsdorf*, 11 Johns. 91; *Bemis* v. *Stearns*, 16 Mass. 200. "In other states it has been held that the mere gift, unexplained, by father to child, does not make even a *prima facie* case in favor of an advancement, but that there must be evidence of intention to treat it as an advancement beyond the unexplained act. The mere gift furnishes no *prima facie* case of an intention to constitute an advancement;" citing *Johnson* v. *Belden*, 20 Conn. 322; *Hatch* v. *Straight*, 3 Conn. 31; *Bulkeley* v. *Noble*, 2 Pick. 337; *Partridge* v. *Havens*, 10 Paige 618. And he continues: "But, whatever conflict may seem to exist on this question, all the cases agree that a gift in the lifetime of the intestate, unexplained, is only a presumption in favor of an advancement, and makes only a *prima facie* case which with the legal presumption may be rebutted by evidence."

In the case of *Hatch* v. *Straight, supra,* the court held that "a deed from a parent to a child in consideration of love and affection is presumed to be an advancement. Though this presumption may be rebutted, yet in a deed of lands from a father to his son in consideration of love and affection the further consideration of five dollars will not be sufficient to rebut the presumption." And it was also held in said case that "the declarations of a grantor subsequent to the delivery of the deed are not admissible to rebut the presumption that such deed operated as an advancement."

In *Kingsbury's Appeal,* 44 Pa. St. 460, it was held that "where, in a deed of land by a father to his son, the consideration expressed was natural love and affection, and a bond for support during life, after the death of the grantor, on distribution of his estate, oral testimony is admissible to explain the attending circumstances of the conveyance, and that it was intended in part as an advancement."

The question, then, as to whether these transfers of property from John R. McClanahan to certain ones of his children were so conveyed and transferred by way of advancement depends upon the evidence and the surrounding circumstances. The solution of this question was referred to a commissioner, before whom the witnesses appeared and gave their testimony, and he had an opportunity of witnessing their demeanor, and judging of their credibility; and where the determination of a fact is referred to a commissioner, and depends mainly upon the weight of the evidence, which is conflicting, and the finding of the commissioner is confirmed by the Circuit Court, this Court will not reverse the action of the Circuit Court therein, unless the evidence before the commissioner was clearly insufficient, in any reasonable view, to support the finding of said commissioner.

So in the case of *Broderick* v. *Broderick,* 28 W. Va. 379, p't 4 of the syllabus, this Court held that, where a cause has been referred to a commissioner to ascertain and report the debts due from a decedent, and he returns with his report, as part thereof, all the evidence which was before him on which he acted, and the report is excepted to as unsupported by the evidence, and the Circuit Court has overrul-

ed said exceptions and confirmed the report, the appellate court will review the evidence, but, unless the same is clearly insufficient, in any reasonable view of it, to support the findings of the commissioner, will affirm the decree of the Circuit Court confirming such report.    See, also, *Smith* v. *Yoke*, 27 W. Va. 639.

The Circuit Court, in the case at bar, in the decree complained of has overruled the exceptions to the commissioner's report, and confirmed his action in finding as hereinbefore stated, and, under the rulings of this Court in the cases we have cited, we do not think that this Court would be warranted in reversing the decree complained of.    Said decree must therefore be affirmed, with costs and damages to the appellees.

AFFIRMED.